I'd like to reserve two minutes for my rebuttal. This case is about the breach of the duty of defense in violation of both endorsement 12 in the contract and the law of Washington and that violation was done in bad faith. I want to approach three different issues. Number one, the law of Washington, because the law of Washington is clear that if any, if the complaint alleges any facts that could result in coverage, then the duty of defense is triggered. And when the insurer is looking at those facts, looking at its policy and looking at the law, it's supposed to weigh anything and everything in favor of providing coverage. We know that didn't happen here. In particular, there were claims of sexual harassment and claims of sexual misconduct, wrongful or wrongful conduct of a sexual nature. Those are clear in the record. And the interesting thing is when I deposed the adjuster on this, and I would encourage you to read that portion of the transcript, I asked the adjuster, is it possible that these claims could be covered at the end? Is it possible that a jury verdict could come out with this liability and not include any of the excluded liability? And the adjuster said, yes. Yes, that was possible. And yes, it was foreseeable at the time. That's the duty of defense triggered. And it doesn't only trigger under Washington law. It triggers under endorsement 12. And I think this is important. An endorsement changes the contract. It comes in, and in particular on this one, changed the duty of defense. Because the duty of defense in the contract before this endorsement came in was there was none. And the endorsement says, and this is on 145 of the record, Washington duty to defend coverage. And it says Allied had a duty to defend any claim which is covered in whole or in part under the insuring agreements. How do you get around the broad language of the exclusion for proclaimed coverage, which says attributed to or in any way related to any actual or alleged sexual molestation or sexual abuse? How do you get around that? As broad as you can imagine. Yeah, and I think there's three reasons that doesn't work. Number one, that exclusion is not brought into the duty of defense endorsement. If you look at the duty of defense endorsement, it is triggered by the insuring agreements. And I would encourage you to compare that to the duty of defense statement in the case of Zia. In the case of Zia, their duty of defense included the exclusions. This one, they specifically wrote to not have that. And the duty of defense was triggered only by the insuring agreements, which their 30B6 witness said were meant to provide coverage, which the exclusions we know have an opposite effect, and which is the other reason that it should not be applied here, or that it should not defeat coverage. In Washington, exclusions are narrowly interpreted and they have to be clearly brought forward. If you look at endorsement 12, they're not clearly brought forward into any of endorsement 12 in the duty of defense, which is separate coverage than indemnity. So I would say it is underneath the structure of this policy that exclusion works towards the indemnity, not the duty of defense, which is exactly the law of Washington. If there was a chance that this could be covered as sexual harassment at the end of the verdict and not be sexual abuse, well, the duty of defense triggered. And they had a duty to provide it. And the failure to provide was a breach of that duty. So assuming we agreed with you that there was a duty to defend, why is the question of bad faith something that we should decide versus sending it to the district court? Yeah. I think the question of bad faith is clear as a matter of law. If you look at both Robbins and the American Best, both cases decide the breach of duty of defense as a breach of that duty by putting its interests in the interpretation of the policy when there was another possible interpretation that could have provided coverage of the facts and the law and the policy, the insurer put their interests too high. And that was a breach of the duty of defense in bad faith. I certainly agree those cases support your position. At the same time, the court has Washington State Supreme Court, I believe, has said there's not a per se bad faith, right? You show a breach of the duty to defend, that's not per se bad faith. There has to be something. But it seems like those cases come pretty close to the line of saying if there's a breach of the duty to defend, there's going to be a finding of bad faith. So where's the gap? And why isn't this case falling on the side of no bad faith? Yeah. I think that's a great issue. Because when you look at Butler and you look at, which is, they were actually correct in their decision not to defend, but they took a long delay to get to that decision. And Butler comes out and says, okay, you're correct in your decision, but if it's found bad faith in that delay, that that was a bad faith delay in the duty of defense, then that triggers coverage by a stop. Versus you look at Truck and it's a failure to defend in bad faith, and they're like, we don't even need to get into the rest of the policy. That's failure to defend. So the question is, are there facts that a jury could look at this and say, oh, they had a reasonable basis? Well, it's never a reasonable basis to say there is this reasonable interpretation for defense, but we're going to resolve that in our favor. And you look at the court in Zia. The court in Zia actually warned every insurer, you take a great risk when you resolve questions of fact, questions of the policy, questions of the law in just straight up denial. Instead, what you're supposed to do is what they should have done here. They should have provided a duty of defense under a reservation of rights and come to the court for the decision. So if there was any possibility, that's basically, that's bad. That's bad. What's that? If there's any possibility, that's bad faith. Yeah, if there's any possibility. And so that's why we have bad faith here. They breached it. And so I think I've covered most of my points of endorsement 12 and the breach. I do want to hit one more point, and I think other counsel will hit it as well. You know, the interesting thing, even in this case, one of the things Allied continually brings up is there were allegations of sexual abuse. Well, there were also allegations of sexual harassment, and that's what triggered the duty of defense. But even so, they sold a sexual harassment policy that's very broad, and we interpret coverage to be broad because you sell insurance to provide insurance. You don't sell an exclusion. And yet they want to claim they sold an exclusion that wipes out the coverage. Anytime you're sued for sexual harassment, if there's also separate and independent sexual abuse. And that's going to be common that those two things are going to happen. And I do want to hit actually one more point. They continually bring up this other insurance. That's irrelevant. They were the first primary. They say we are primary defense for the EPL policy. They were primary. They owed the duty of defense. They failed to provide it. I'm going to reserve the rest of my time unless you your honors have further questions. Thank you. Good afternoon, your honors. Dan Bridges. I represent Nicholas snack. I'd like to reserve three minutes. I do have some points I want to make. I want go back to the district court on a question of bad faith is Aaliyah before there was Aaliyah found as a matter of law that this carrier applying this exclusion exactly as they did was bad faith. Without Aaliyah, right? That was Aaliyah as a first impression. But now we have Aaliyah. Aaliyah has been the law in the state of Washington for 15, 20 years. And they still did it again. That's why you don't remand back to the district court for a question of bad faith because the Supreme Court of Washington has already told you this is bad faith as a matter of law. Now, let me get back into my points. You might ask yourself, how could this possibly be as bad as the appellants painted? Because if everything the appellants say is true, wow, they really got this wrong. Let me tell you, I do not believe carriers set out to commit bad faith. I think adjusters are generally good people. They want to do their jobs and go home. I firmly believe that. But it's reasonable to ask yourself, how can it be this bad? Is it really this bad? It is that bad. This is not really a record, but I think it's important context. The insurance industry in the last 20 years has undergone vast centralization. There was a carrier in Washington that had a huge presence in Washington. They've all camped off and go to Arizona. All the western state of the country is handled out of Arizona. This carrier is based in Connecticut. What we have, the problem is, when you have carriers who are adjusting national wide claims from a little bitty place, they stop caring about the law in which they're writing the coverage. That is problematic on all sorts of levels. Counsel, I want to go to the state court complaint with regards to Mr. Nack and the allegations. Under the allegations, they're labeled as abuse and harassment. Why is that not dispositive here? In other words, why are those acts not sexual abuse and therefore excluded? Sure. Number one, there's Ninth Circuit law, and I cited two in our brief, that buzzwords do not determine coverage. Facts determine coverage. I can't take away ABHS's coverage because I'm sitting in my office and use a certain word. ABHS bought that coverage. I can't take that away by my decision to use a particular adjective. The second point is this. I asked both the adjuster and the 30B6 flat out, and I showed them the complaint. Do you agree? I'm talking about right now the failure of accommodation claim. Is this covered? Yes. Is it excluded? No. That's cited to pinpoint in my brief with block quotes. Your Honor, respectfully, if Allied admits it's covered and not excluded, that answers your question. It's not excluded. Let me get back to my point here. The problem with centralization is this. When I asked the adjuster, I took her through the wax, basically reading them as hypotheticals, asking her these various duties. And she had no idea what I was talking about. This went on for a while. And finally, she said, quote, I don't know what the regulations are in this hypothetical state of Washington that you're giving. I'm pretty sure Washington is not a hypothetical state, nor are our laws. Yet that is how this carrier approached this claim. They may have been right had they applied the law of the state of Delaware, but we're in Washington for this claim. And when a carrier decides to write coverage in Washington, they are bound to understand our laws. I cite you over and over on our brief with pinpoint sites. They don't bother to know the law of Washington. They didn't look at the law of Washington in this case. They don't care what the law of Washington is. When I asked them flat out, well, if the law of Washington says this, would you apply it? Literally said it's arguable. That was the quote from the adjuster. The 30B6 says, well, I don't know. How can a carrier under oath say it's arguable whether we will follow the law in your state? Now, the other point I'd like to make is this isn't this isn't not an ISO policy. That is critical. The carrier relies entirely on ISO policies. ISO policies ensure accidental losses and unintended consequences. This is not an ISO policy. This is a very unique policy written for health care facilities, and it expressly ensures intentional acts and intended consequences. When you look at that definition T, any misconduct of a sexual nature is covered. So the whole idea of relying on ISO policies is wrong. They ensured exactly this type of loss. And again, like I just said, the carrier admitted Mr. Nax claims were covered and not excluded. I could sit down right now, but I won't. Here's what I'd like to ask you to consider. Here's the fulcrum of their argument. And they said as much. Well, Mr. Nax claim is covered but not excluded. But the fact that other covered, pardon me, other excluded claims were made subsumes his covered claim. That is not what this contract even says. It says we will cover any claim whether covered in whole or in part. The very policy itself repudiates that. Secondly, the law of the state of Washington in terms of good faith, which is engrafted into every single insurance contract, whether or not it says it, is exactly that. A carrier has an obligation to cover any claim, whether covered in whole or part. Quote, an insurer's duty to defend applies to any allegation in a complaint that may result in a cover liability, even if other claims in the complaint are clearly outside the scope of coverage. That is Webb, that is credential, and that is the Supreme Court in Immunex. So they had a duty to defend. I cite you authority that if there's any covered claim, the prophylactic duty of good faith requires them to defend all claims to ensure the covered claim is properly defended. And it didn't think coverage clearly laid. Now, I want to jump really quickly to this exclusion. This exclusion does not apply. Given the overbroad, yawning coverage grant by definition T, covering any misconduct of a sexual nature, to try to exclude sexual abuse as a carve out requires some type of definition, because sexual abuse is any misconduct of a sexual nature, right? When I asked the adjuster in the 30B6 over and over, explain to me where the crossover is, they couldn't do it. They just couldn't do it. After six months of litigation, knowing they were going to be deposed, after three days of depositions, they still couldn't explain how this exclusion is applied against that coverage. So that renders it vague and therefore unenforceable. And as my colleague just said, if you've got two different possibilities, you have to pick the one for coverage. And they did exactly what Aaliyah said was bad faith. They picked the resolution that favored them. That's why you don't send it back to the court, district court, for a bad faith determination. More importantly, though, even if they are right, they are wrong. Because even if this exclusion could be applied in the way they do, they ignore Aaliyah and they ignore the district court, perhaps not binding precedent, but there are two cases in this very district that expressly says that if you have an exclusion exactly like theirs, it does exclude the perpetrator's conduct, the intentional conduct, and it does exclude claims that the insured did not prevent it from happening in the first place. But it does not exclude the insured's negligent or later conduct in response to it. In that context, it doesn't matter whether initiating conduct was covered or not. What at that point is we are evaluating the insured's conduct. So even if this exclusion could apply, they applied it wrong. There's really two steps, right? Was it intentional? Was it excluded? And then did the insured do something after the fact with knowledge? And the complaint expressly alleges that ABHS had this knowledge of this misconduct. It was going on for months before Mr. Nack even was enrolled there. They didn't do anything to prevent it. With knowledge of it, that's the breach of the duty and that's the insured at. And I'm way over by three minutes I wanted to reserve. Thank you, Your Honors. Thank you, Your Honors, and may it please the Court, Fred Yarger for Appley Allied World. We certainly agree that the Washington duty to defend is broad, but as the case law also makes clear, it's not unlimited. So counsel, I'll come to the point of what I think is difficult for me about your position on how to read the policy is that we have expressed coverage of sexual harassment and other misconduct of a sexual nature, and then we have the exclusion, right? And I think you essentially assume for the purposes of your argument that the complaint includes allegations that would be covered under the sexual harassment provision, but also includes allegations that would be excluded under the exclusion. And you're saying your argument is that under that sort of mixed scenario, right, because of the wording of the exclusion, we should deem the entire lawsuit to be excluded because they come in related to the allegations of sexual abuse. So that's my understanding of your position. I understand that's certainly a plausible interpretation of the policy, but the question isn't whether your interpretation is plausible. The question is whether the plaintiff's interpretation is also plausible or conceivable, I think is the word that the Washington State courts use. And it seems to me that it is also plausible. They have a couple of different arguments, but one of which is that it is conceivable that the policy doesn't prohibit essentially splitting the claims into covered and excluded. It doesn't really actually say what to do in that scenario. I couldn't find a provision in the policy that actually says when you have a complaint with covered and excluded allegations that you should not split the claims essentially into covered and excluded and give coverage in part. So you're essentially asking for the broadest possible reading of language for an essentially implied interpretation. But when it's only implied, it seems to me that then the plaintiff's interpretation is not precluded. Their interpretation is also conceivable. Can you respond to that? Yes, Your Honor. And I understand there's a lot there, so let me try to unpack it. So I agree with you. We have to read this exclusion and the policy as a whole and determine if it's clear and unambiguous and compare that to the complaint. Is there a provision in the policy that says you should not split the complaint into covered and excluded? Yeah, and let me explain that. This policy doesn't alter that baseline rule. What it does is it creates an exclusion that says if there is harassment that it's in any way related to abuse, that loss is not covered. If it were a case, for example, where there was racial harassment that occurred in a separate instance of sexual abuse, the other harassment would certainly be covered. The question is, is there any relation between those two losses? Why do you have to exclude that broadly? I guess if you could split the complaint into covered sexual harassment and excluded sexual abuse, you could still give meaning to the related to provision. I think in the case you cited, there was a determination that negligent retention of an employee who engaged in sexual abuse didn't arise from the sexual abuse, but was related to the sexual abuse. You could have a whole series of allegations and losses that are arising from and related to the excluded allegations of sexual abuse and split those off as excluded and still have covered allegations and losses that are not. I guess I'm just looking for something that says you can't disaggregate the complaint. I think where the words used in the it's not even conceivable on this policy that you can split it up. In your honor, it's the way that the district or the district court I think provides a very helpful roadmap. Because what the district court did was it looked at this term related to. And there's a case applying Washington law that says that's unambiguous. It means connections that are either logical or causal. And that includes time, place, modus operandi, et cetera. Here, we had a complaint filed by all plaintiffs that alleged nearly the exact same kind of conduct. Not only that, it was the same person at the same facility engaging in nearly identical conduct. Mr. Knack counsel did not allege any contact, I don't think. Was there any contact? No, that's not quite true, your honor. Mr. Knack very specifically alleged he was subject to strip And so his allegations map very clearly and very closely onto the rest of the plaintiffs. And so as the district court found, we don't just have separate incidences of harassment versus abuse that aren't connected to each other. We have a single course of conduct by the same individual at the same facility during the same time period using the same modus operandi. But why wouldn't it be possible to believe that, for instance, there were harassing comments, but that there was no touching? I understand that some of these things happened at the same time, but wouldn't it be possible for a finder of fact to say, well, I believe that these comments were made, but yeah, but I don't believe that there was any touching. There was nothing that wandered over into abuse. In the eight corners context, your honor, it's very important for the jury to respect what the claim itself says. One of the cases I'd point you to is U.S. AA versus speed. And that's a case involving a road range incident. There, the document that alleged to give rise to coverage used the term deliberate conduct. The policy didn't cover deliberate conduct. And there the Washington court of appeals said, we have to look at the eight corners. So the four corners of the policy and the four corners of the document that allegedly gives rise to coverage. And if it's unambiguous here, very similar sexual abuse was very specifically and repeatedly alleged. We have to apply the eight corners rule. And that's what we look at to determine coverage. Now, if anything else came up throughout the course of this litigation that suggested that there, there was no relationship between the harassment abuse. Of course, the insurer is going to look at that, but that never occurred here. In fact, as the district court judge acknowledged everything outside of the complaint confirmed what the complaint said, the demand letters. And in promise, the premise of your argument assumes that we cannot disaggregate the covered and excluded allegations, right? So I guess mine is really asking you to go a step back and say, point me to something in the policy that says when determining whether there can be coverage in part, right? We have told the insured that we will not disaggregate the complaint into covered and excluded allegations. As there's an excluded allegation, we will deem the whole thing to be related to and therefore excluded, right? I mean, or that there's some, something expressed in the policies that says it cannot be disaggregated. So I want to point you to a couple of things because there's sort of an order of operations that you have to understand how this policy works. First, the exclusion says, shall not cover any loss in connection with the claim. If that loss is in any way related to actual abuse. Here, there was all of the losses, all of the allegations in the complaint were all directly tied to abuse. So this wasn't an instance of a mixed claim under the exclusion. In cases of truly mixed claims, Your Honor, the endorsement does say in whole or in part. The problem is here, there was no coverage in part because everything in the complaint was all tied to the same behavior that was connected in time, place, person, modus operandi. It was all one related course of events. It was a single scheme of sexual abuse. And that's why the entirety of the complaint was excluded. But I guess, why isn't it possible to read the claims otherwise? Because I just suggested there were some allegations about comments being made that were disaggregated in a way from the incidents of touching. Why isn't that a fair reading of the complaint? Why is it so intertwined? Go ahead. Because the undisputed or the unambiguous meaning of the term related to encompasses connections exactly like those that were in the complaint. Same person, same time, same place. And this is what the district was recognizing. You're saying that we should import into the term related to the premise that we cannot disaggregate the complaint. And I guess that, to me, here, if we could say, for example, under Washington law, narrowly interpret the exclusion for sexual abuse to not include the strip search in which there was no contact. That doesn't constitute molestation. And it doesn't constitute sexual abuse. And that there was, therefore, that all constitutes sexual harassment. And there's a body of factual allegations in the complaint that merely constitutes sexual harassment or other sexual misconduct that is expressly covered. And then we just take those out. And any losses that are attributable to those covered allegations would be covered. And then we take the ones, the allegations that constitute sexual abuse and sexual molestation and say those are excluded. You're saying you interpret, I understand your interpretation of the exclusion is that because it says anything related to sexual abuse, it encompasses even the covered sexual harassment allegations. The entire complaint gets excluded, even though some of those allegations taken on their own would otherwise be covered. If they're taken on their own and unrelated to sexual abuse, I agree with you. The way that this exclusion is written, it makes very clear is if there's harassment, it's in any way related to abuse, you don't have a mixed claim. You don't have two claims. You can certainly have that under this policy, Your Honor, and we're not denying that. But the way this exclusion is written, and the courts applying Washington law have actually looked at exclusions not too dissimilar from this. I can give you a site for it. It's the Capital Specialty v. JBC Entertainment case. Very similar language. The court found that the claims there were excluded given, in part, the breadth of the exclusion under the policy. And it's not just that, of course. It's the discourse recognition that in any way related to is an unambiguous term that is broad. But we're certainly not saying that the mixed claims rule doesn't apply. But when there's a loss where there's abuse and harassment in tandem and they are related to each other, that excludes that loss. And of course, that's why there are separate policies in this industry. There are policies that cover these more typical conduct that you'd see covered by unemployment practices. And there are separate policies, just as there was here, for sexual abuse. I want you to go back to my question about Mr. Nack. Because I went back to 235, and it's not there. I think what you mean is 231. If I said 235, I misunderstood. I assume that's what you meant. But again, I see that in 230, as soon as I was told Mr. Nack to remove his clothing, I went to 231, and it did say that he was asked to remove his shorts. There's nothing in that paragraph that says anything about being physically touched. I know that it says that he was asked to, that he was Mr. Stevens strips after one of these strips searches. But there was nothing in the actual complaint saying that there was actual touching. Was there somewhere else that I'm supposed to look at? There's also the hugging, the physical contact through hugging. And that appears on the previous page. And so it was the exact same type of conduct that every other plaintiff was alleging in this case. And the other place I would point you to, Your Honor, in the complaint is, I think it's 233, and this is in the statements of the claims itself, the causes of action. It says that all plaintiffs, not just some and not others, were subject to, quote, sexual abuse and sexual harassment, and were injured by this particular employee's sexual abuse and harassment. So the four corners of the complaint make very clear that there were both allegations as to all plaintiffs, not just as to some and not just as to others. So just to make sure I understand your argument, is it that the harassing acts here were all just kind of prelude to abuse? They're all really the same, it's the same thing in this case. You can't separate them out. You cannot. You cannot. And that's what the district court recognized in analyzing the- As a factual matter on this. Well, as a factual matter based on the four corners of the complaint as pleaded by these plaintiffs. Yes. I just want to make sure. So I understand you're largely resting on the possible breadth of the term relating to. My understanding from the Washington State case law that, for example, the negligent hiring claim that plaintiffs brought, they could say that the hiring didn't arise from the sexual abuse, but was related to the sexual abuse. And your client could say, therefore, the hiring was, even though it didn't arise from because of that related to language, it would fall under the exclusion if it related to the sexual abuse. Is that correct? That would be your interpretation. So there are some cases under Washington law that apply specifically the arising out of, in both the intentional sort of assault context and in other contexts as well. And what the court has held there is that post intentional assault conduct can still give rise to liability. But those policies were not written with this language. One of them was, and in one of those cases, and I think this is very important because it really distinguishes between arising out of and related to, and this is American Best Food, it found that this post assault conduct, quote, while related to the excluded conduct, which was the assault, was not excluded by the arising under language. Okay. So and then, but you would say that problem is taken care of in your policy exclusion because it includes the related to. Absolutely. Correct. So there is a way to give meaning to the related to language in your exclusion, right, without broadening it all the way to the sexual harassment allegations. Is that correct? I must have misunderstood because, no, that's not what we're saying. And I think American Best Food kind of points this up. You have to give independent meaning to arising out of and in any way related to. Right. So the sexual abuse and other losses that arise from the sexual abuse would be excluded as well as post conduct that is only related to and doesn't arise from Washington law would all be excluded under the of the sexual abuse exclusion. But I guess what I'm saying is there is a way to give meaning, legal significance to every term in that exclusion while still disaggregating the expressly covered sexual harassment allegations. I certainly agree with you that there's a way to give meaning to all the terms, but when you give meaning to the terms under the unambiguous meaning by courts applying Washington law, if those things are related to each other, they're excluded. I guess the question is, really, how broadly do we interpret the term related to? And Supreme Court has said the related to can be interpreted in a variety of ways, and we don't always have to give it its maximalist scope. And it seems to me Washington law says we should interpret exclusions narrowly, and certainly if there's ambiguity, we construe it against the insurer. So I understand that related to could mean everything in the complaint, but why is that the only possible interpretation here? I think it's the only possible interpretation because it includes these other terms in the exclusion. It's not just related to, it's alleging, arising out of, based upon, attributable to, or any way relating to any actual or alleged sexual molestation abuse. And the clause was very much written to encapsulate those logical and causal connections, the broad connections that the district court recognized fall within the relating to definition. So I think if you didn't give related to its plain meaning based on the case law that the district court cited, I think you would risk having it mean the same thing as arising out of or creating other interpretive problems. And certainly the other principle I'd like to point to, Your Honor, is the Washington Supreme Court has said perhaps exclusions can be ambiguous in some cases, but not in others. There it was a pollution case. It was a quadrant court. Here, the complainant issue, the underlying complaint, very explicitly used the very terms to describe this conduct on behalf of all plaintiffs such that it fell within the exclusion. And under cases like USAA versus Speed, you have to read the complaint. You can't ignore it. You can't close your eyes to it. And I think that very much points up that this is a harassment and abuse that were linked together and related to each other. So I think in this case, application of the exclusion is straightforward given the four corners of the underlying complaint. And I see I have 30 seconds. I'm happy to answer questions, but otherwise I would request that you your honors. Judge Thomas, I want to address one of your questions of whether or not the jury could find sexual harassment without finding sexual abuse. And I'd point you to 288 to 290 in the record where I asked the adjuster just that. And the adjuster says, yes, a verdict could come down that finds sexual harassment. And I believe that I put in the term tag ABHS with sexual harassment without also sexual abuse. And the adjuster was yes, said yes. And I asked, was that visible at the time you made this decision? And her answer was yes. And then further, if you read in there, I say, do you know what triggers coverage under Washington law for the duty of defense? And she says no. That's why we're here. That's the problem. That's the bad faith. I want to also point out something that counsel said that I found much different than their brief, because their brief has always been if the claim itself ever alleges any sexual abuse, then the whole thing's gone. That changed today. I heard him say that if the claim were to allege racial discrimination and sexual abuse, well, that would be covered. But this one alleges separate incidences. These don't have to be tagged together. They're not causal in nature, especially under floating, that could cause sexual harassment separate and independent. And that brings me to my last page, the related to that he talks of in American Best Foods, talks about a causal relationship. And there is a possibility, if you look back through the Supreme Court in the Bodstock case, talks about how do we deal with the causal relationship. You remove something and see the outcomes different. If you have sexual harassment in some of the words here, you can remove the abuse and you'll still have liability for the sexual harassment. It was clear in the beginning that this was the duty of defense was triggered. It was denied by them favoring their own interpretation and their own interests. I ask that you reverse the trial court and I also the district court. And I also ask that you grant summary judgment on the breach of the duty of defense in bad faith. Thank you, your honor. Three quick points. There was no allegation of touching by Mr. Knack other than two hugs. And if two hugs constitute sexual abuse, that simply demonstrates the perniciousness of this exclusion because a hug certainly constitutes an unwanted sexual overture, which is expressly covered by Definition T. The issue of related to or arising out of, I don't want to say the case law necessarily treats them identically, but they are so close to each other there really is no effective difference. I'm not asking you to read it out of the policy. I'm simply asking you to read it as the Supreme Court does. Related to and arising out of in these claims means it includes the initial act that's excluded. It includes not having prevented before the fact the act, but it does not include the later response, which is merely negligence. That's all I'm saying right here. Furthermore, what he's really arguing to you now is that what this means, any response to excluded conduct is also excluded because it is related to or arising out of. The Northfield case out of the same district, which I cited page 36 of my brief, expressly says no. If you want to do what they just argued they want to to include the later conduct, you have to include language like that, and the Northfield policy actually included that language. It said your response to excluded conduct is excluded. They could have included that language if they wanted it, and they didn't do it. He's asking me to read language into the policy to create an exclusion that is not there, and that has not helped me interpret coverage in this state. There is a lot in this case, and given the short amount of time, it's impossible to talk about. I would like to ask you please to not merely reverse the summary judgment, but you should reverse the denial of Mr. Nack's motion for summary judgment. Furthermore, as this is an IFCA claim, there are a lot of obvious off roads, off ramps in this case that there's coverage. That was bad faith, but there are so many aspects of bad faith I outlined in my brief from not having claims policies to not properly explaining the exclusion. I ask you to please to work through all those steps because when you remand, we have to retry everything that isn't decided as a matter of law. If we're not entitled to it, I get it, but I would ask you to go through the brief in detail and look at all the acts of bad faith because on IFCA, we have to go back and try those to a jury because we're in district court, not state court. Thank you for your time, Your Honor. Thank you. Thank you, counsel, for your helpful argument, and I believe we are adjourned for the day. All rise.
judges: SUNG, THOMAS, MENDOZA